Yuan v. Garland

BIA
Poczter, IJ
A209 163 956

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand twenty-two.

PRESENT:
            DENNIS JACOBS,
            SUSAN L. CARNEY,
            JOSEPH F. BIANCO,
                *Circuit Judges.*

_____

JIAN DI YUAN,
            *Petitioner,*

            v.                                    20-2907
                                                  NAC
MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
            *Respondent.*

_____

FOR PETITIONER:        Robert J. Adinolfi, Esq., New
                       York, NY.

FOR RESPONDENT:        Brian M. Boynton, Acting Assistant
                       Attorney General; Anthony P.

Nicastro, Assistant Director; Sherease Pratt, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Jian Di Yuan, a native and citizen of The People's Republic of China, seeks review of an August 4, 2020 decision of the BIA affirming a June 20, 2018 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jian Di Yuan,* No. A 209 163 956 (B.I.A. Aug. 4, 2020), *aff'g* No. A 209 163 956 (Immig. Ct. N.Y.C. June 20, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

As an initial matter, we find no merit in Yuan's due process arguments that the IJ's decision lacks sufficient reasoning and that the BIA exhibited bias by warning in its written decision that an individual who fails to depart after an order of removal will incur a fine. To establish a due

2

process violation, the noncitizen must show that he was denied the opportunity to be heard "in a meaningful manner," *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (quotation marks omitted), and that the "alleged shortcomings have prejudiced the outcome of his case," *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008). An IJ is required to conduct "a certain minimum level of analysis . . . if judicial review is to be meaningful." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). The IJ's decision here satisfies this requirement because, as discussed below, the IJ made specific findings in support of her adverse credibility determination. The BIA's notice of the possible fine was an accurate restatement of the civil penalties for failure to depart, *see* 8 U.S.C. § 1324d, and its notice does not evidence bias because the agency is statutorily required to inform the noncitizen of the penalties he or she might incur for failure to depart, *see id.* § 1229a(c)(5) ("If the immigration judge decides that the alien is removable and orders the alien to be removed, the judge shall inform the alien of the right to appeal that decision and of the consequences for failure to depart under the order of removal,

3

including civil and criminal penalties.").

We have reviewed the IJ's decision as the final agency determination. *See Shunfu Li v. Mukasey*, 529 F.3d 141, 146 (2d Cir. 2008). We review the IJ's adverse credibility determination under a substantial evidence standard, *see Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018), and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

The IJ may, "[c]onsidering the totality of the circumstances," base a credibility finding on inconsistencies in an applicant's statements or between his statements and other evidence, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. Here, the inconsistencies, omissions, and lack of reliable corroboration provide

4

substantial evidence for the IJ's adverse credibility determination.

The IJ reasonably relied on inconsistencies related to Yuan's alleged arrests for attending an underground church and protesting a land dispute. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). First, Yuan testified that he was arrested in April 2014 for attending an underground church service, but his brother's letter states that this arrest occurred months earlier, in February 2014. The IJ was not required to credit Yuan's explanation that his brother might have misremembered. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)).

Second, Yuan's oral testimony was both internally inconsistent and inconsistent with his written affidavit regarding the date on which he was arrested for protesting the government's taking of his family's land: in his affidavit he stated that he was arrested on March 25, 2016; at his

5

hearing, he testified on direct examination that the protest and arrest took place almost two weeks earlier, on March 12, 2016; and when counsel for DHS cross-examined him about the land dispute, Yuan stated that the arrest took place two years earlier, on March 25, 2014. The IJ was not required to accept Yuan's statement on redirect that the land seizure and protest occurred in 2016 in light of the inconsistent dates he gave earlier. *See Siewe v. Gonzales*, 480 F.3d 160, 167–68 (2d Cir. 2007) (holding that a reviewing court defers to the agency where there are two possible interpretations of the record).

Third, Yuan testified that his brother paid a fine to obtain Yuan's release from detention. His brother's letter says, however, that Yuan "was beaten and paid five thousand RMB and released after six days." The IJ's interpretation of these statements as inconsistent was reasonable based on the language of the letter and the lack of any indication that his brother paid the fine. The IJ was not compelled to credit Yuan's explanation for the inconsistency—that his brother was elderly—because his brother reported other facts and exact dates consistent with Yuan's written statements.

6

*See Majidi*, 430 F.3d at 80.

The IJ also reasonably relied on the omission from Yuan's affidavit of any mention of an earlier arrest related to his church-going. *See Xiu Xia Lin*, 534 F.3d at 167 (upholding adverse credibility determination based on inconsistencies and omissions). Yuan testified that he was arrested in June 2002 for attending an underground church service, but he did not mention the arrest in his affidavit. The IJ did not err in relying on the omission because the affidavit included other details from that year, including allegations that they began attending the local church in June 2002 to deal with the pain of the fact that Yuan's wife was forced to have an abortion. Thus, Yuan might reasonably be expected to mention an arrest that occurred in the same month as he began attending church. *See Hong Fei Gao*, 891 F.3d at 78–79 ("[I]n assessing the probative value of the omission of certain facts, an IJ should consider whether those facts are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances.").

The other omission highlighted by the IJ—that Yuan's brother's letter omitted any report that the police continued

7

to look for Yuan—does not necessarily undermine Yuan's credibility. *See Hong Fei Gao*, 891 F.3d at 81 (cautioning against reliance on a third-party omission that "creates no inconsistency with an applicant's own statements" (emphasis omitted)). But because the first omission noted and the inconsistencies described above already called Yuan's claim into question, the IJ did not err in relying on the absence of corroboration or indeed of any mention in this letter about Yuan's allegation that his brother told him that the police continued to look for him. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question.").

Taken together, the inconsistencies, omissions, and lack of corroboration constitute substantial evidence in support of the IJ's adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 167; *Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing

8

that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."). The adverse credibility determination is dispositive of Yuan's claims for asylum, withholding of removal, and CAT relief because all three claims rest on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court