04-3985-ag
Shunfi Li v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Submitted: August 9, 2007                    Decided: June 13, 2008)

Docket No. 04-3985-ag

_____

SHUNFU LI,

*Petitioner*,

—v.—

MICHAEL B. MUKASEY, Attorney General,[1]

*Respondent*.

_____

Before:

CALABRESI, RAGGI, AND HALL, *Circuit Judges.*

_____

Petition for review of a decision of the Board of Immigration Appeals denying an

application for asylum, withholding of removal, and relief under the Convention Against

Torture because, inter alia, petitioner's testimony was not credible and corroborating

_____

   [1]  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General
Michael B. Mukasey is automatically substituted for former Attorney General John Ashcroft
as the respondent in this case.

1

documents were not authenticated.

PETITION GRANTED, DENIAL DECISION VACATED, AND CASE REMANDED.

––––––––––––––

YUMING WANG, Wynnewood, Pennsylvania, for *Petitioner*.

MARK L. NICHOLS, Assistant United States Attorney, *for* Richard B. Roper, United States Attorney for the Northern District of Texas, Fort Worth, Texas, for *Respondent*.

––––––––––––––

REENA RAGGI, *Circuit Judge*:

Shunfu Li, a native of China who claims to have been persecuted in that country for her practice of Falun Gong, petitions for review of the July 16, 2004 decision of the Board of Immigration Appeals ("BIA") affirming the April 16, 2003 decision of Immigration Judge ("IJ") Barbara A. Nelson denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). See In re Shunfu Li, No. A95 462 260 (BIA July 16, 2004), aff'g In re Shunfu Li, No. A95 462 260 (Immig. Ct. N.Y. City, Apr. 16, 2003). Petitioner submits that, to the extent the agency determined that her fear of future persecution was not credible, it erred in (1) finding her testimony (a) vague, and (b) inconsistent with website reports of conditions in China; and (2) faulting her failure to authenticate documentary evidence of an outstanding warrant for her arrest in China. Since the agency decided Li's case, this court has indicated that certain inquiries or findings are necessary preliminary to holding that vague or unauthenticated evidence is not credible or cannot be relied upon. See Ming Shi Xue v. BIA, 439 F.3d 111, 121-22 (2d Cir. 2006)

2

(holding finding of testimonial vagueness cannot by itself support adverse credibility determination unless IJ identifies "alleged inconsistencies" and provides applicant with "an opportunity to address them"); Jin Chen v. United States Dep't of Justice, 426 F.3d 104, 114 (2d Cir. 2005) (same); Cao He Lin v. United States Dep't of Justice, 428 F.3d 391, 404-05 (2d Cir. 2005) (holding IJ cannot reject purportedly official documents solely because petitioner failed to authenticate them pursuant to 8 C.F.R. § 287.6). The agency's decision did not meet the requirements imposed by these cases, and hence was erroneous. Further, because we cannot confidently predict that the agency would reach the same decision absent these errors, we grant Li's petition, vacate the challenged agency decision, and remand the case to the BIA for further proceedings.

## I. Background

Shunfu Li entered the United States without documentation in June 2001. In response to removal proceedings initiated by the Immigration and Naturalization Service,[2] Li applied for asylum, withholding of removal, and relief under the CAT. Li based her claim of a well-founded fear of future persecution if returned to China on her alleged past persecution for practicing Falun Gong.[3]

---

[2] In March of 2003, the Immigration and Naturalization service was reconfigured as the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services. Both Bureaus are within the Department of Homeland Security. See Noble v. Keisler, 505 F.3d 73, 75 n.2 (2d Cir. 2007).

[3] The practice of Falun Gong has been banned by the Chinese government, largely because of "perceived anti-government political opinion" by practitioners. See Chun Gao v. Gonzales, 424 F.3d 122, 129 (2d Cir. 2005) (internal quotation marks omitted) (emphasis

A.     Li's Application Claim of Past Persecution

In her initial application for relief from removal, Li stated that she began practicing

Falun Gong in 1996 in response to various health problems.  By 1998, Li was gathering

people to practice Falun Gong in a public park, and she was appointed director of a local

Falun Gong practice station.  After Chinese authorities declared Falun Gong illegal in 1999,

Li continued to practice its exercises in her home.  She was doing so together with four other

persons on December 16, 2000, when police raided her home and arrested all five persons.

Li asserts that she was detained for three months, during which time she claims to have been

tortured.  To secure Li's release, her husband paid 10,000 yuan.  Upon Li's return to work,

her employer demoted her from a managerial position to a janitorial one.  A few months later,

Li fled to Canada and then to the United States.

B.     Li's Hearing Testimony

An evidentiary hearing on Li's claims for relief from removal was held before an IJ on

April 16, 2003.  As in her application, Li cited her past arrest for practicing Falun Gong as the

basis for her fear of future persecution.  Her testimony about this arrest was not, however,

always consistent with her application account.  For example, on direct examination Li, who

was represented by counsel, testified that when police raided her home she was practicing

Falun Gong with "more than 10 people," Tr. of Hr'g at 18, not four as reported in her

---

in original).  Political opinion is one of the statutorily enumerated grounds for asylum.  See
8 U.S.C. § 1101(a)(42)(A).

4

application. Li further testified that only three persons, including herself, were arrested. She explained that the remaining seven persons received only warnings because they were "ordinary people." Id. at 22.

On cross-examination, Li stated that a total of sixteen Falun Gong practitioners were present in her home at the time of the raid, of which three were arrested. Asked to explain the apparent inconsistency with her written application, which indicated that a total of five persons (counting Li) were practicing Falun Gong in petitioner's home at the time of the raid, all of whom were arrested, Li insisted that her application referenced sixteen practitioners and that her account was consistent.[4]

On further cross-examination, Li initially hesitated when asked to explain why she did not obtain an affidavit from her husband, who remains in China, corroborating her arrest and the 10,000 yuan fine paid to secure her release. Eventually, she stated that her husband would submit such an affidavit if she so requested.

Asked on cross-examination to describe Falun Gong's organizational structure, Li testified that there were no physical headquarters, that she was assigned to her unpaid position as a station director, and that she reported to a specific individual. With the consent of the parties, the IJ put into the record a dozen pages about Falun Gong that she had downloaded from an Internet site, www.religioustolerance.org. These pages stated, inter alia, that Falun

---

[4] Li's application indicated that she had gathered sixteen people to practice Falun Gong in a park in 1998.

5

Gong denies being "a religion, cult, or sect." Certified Administrative Record in A95 462 260 ("CAR"), at 93 (emphasis omitted). One of Falun Gong's spokespersons is quoted as saying the group "is not involved with politics or against any government." Id. at 97. More to the organizational point, the website reported that "[t]here is no leader . . . . There is no paid staff or clergy. All work is done by volunteers. They do not maintain a list of members' names." Id. (internal quotation marks omitted).

C. Documentary Evidence

To corroborate her persecution claim, Li submitted documentary evidence, including copies of warrants authorizing her arrest and the search of her home on the day of the alleged raid, a receipt for items seized in the course of the search, and a second arrest warrant purportedly issued after she fled China. This second warrant, dated June 30, 2001, states in part:

> To: All Provinces, Self-Governed Districts, Directly Governed Municipal Public Security Departments and Bureaus.
>
> Through investigation, it's been verified that Li Shun Fu . . . is a Falungong General Station as director of Qingnianbu practice Station. She had been vigorously involved in the activities of spreading and propagating the cult-Falungong. . . . She has now escaped to abroad to avoid punishment. As a result . . . please be notified that as soon as you discover the aforesaid person, hold in custody immediately and report without any delay.

CAR at 147.

D.     Denial of Relief

    1.     The IJ Ruling

At the conclusion of the hearing, the IJ denied Li's application for relief from removal, finding that she had not credibly established past persecution or feared future persecution. Six factors influenced the IJ's adverse credibility finding: (1) inconsistencies between Li's sworn relief application and sworn testimony regarding the number of persons present in her home at the time of her arrest, (2) Li's failure to adduce reasonably available corroborative evidence from her husband, (3) Li's halting and hesitant demeanor during her hearing testimony, (4) the vagueness of Li's testimony, (5) the inconsistency between Li's description of Falun Gong's organization and that reported at www.religioustolerance.org, and (6) the lack of authentication for the corroborative official documents submitted by Li.

    2.     The BIA Affirmance

Li appealed the IJ's adverse credibility finding to the BIA. The brief submitted by counsel to the Board on Li's behalf contains just over two pages of argument. Nowhere therein does Li mention, much less challenge, the identified inconsistencies between her relief application and her hearing testimony regarding the circumstances of her past arrest. Nor does the brief fault the IJ for rejecting Li's credibility based on her unconvincing demeanor and failure to adduce reasonably available corroborative evidence from her husband. Instead, Li's administrative appeal argued that the IJ erred in finding her not to be credible based on the vagueness of her testimony, contradictory website information about Falun Gong, and the lack

7

of authentication for corroborative documentary evidence.

The BIA summarily rejected these arguments, prompting this petition for review.

## II.    Discussion

### A.    Standard of Review

When the BIA summarily affirms the decision of an IJ, we review the IJ's decision as the final agency determination. See Twum v. INS, 411 F.3d 54, 58 (2d Cir. 2005). While we review questions of law de novo, see Delgado v. Mukasey, 508 F.3d 702, 705 (2d Cir. 2007), we apply the substantial evidence standard to the IJ's factual findings, which we will uphold unless "any reasonable adjudicator would be compelled to conclude to the contrary," Tao Jiang v. Gonzales, 500 F.3d 137, 140 (2d Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)). Insofar as Li challenges the adverse credibility finding that underlies the IJ's denial of her application for relief from removal, we note that the IJ failed to follow certain inquiry and explanation requirements identified in our recent case law. This legal error requires us to remand.

### B.    The Challenged Credibility Finding

#### 1.    Adverse Findings Waived on this Petition

At the outset, we note that petitioner's brief to this court simply repeats, word for word, her brief to the BIA. To the extent the brief fails to cite a single decision of this court in support of the arguments advanced, it obviously fails to comply with the Federal Rules of Appellate Procedure. See Fed. R. App. P. 28(a)(9)(A). Counsel is cautioned that the future

8

filing of such an inadequate submission will be grounds not only for rejection of the brief but for formal reprimand or other sanction. For purposes of our review today, however, we note simply that the brief filed with this court does not challenge three significant findings that informed the IJ's adverse credibility determination, specifically, the inconsistencies between Li's relief application and her hearing testimony about the circumstances of her arrest, Li's unconvincing demeanor, and her failure to adduce available corroborative evidence from her husband. Thus, any challenge to these findings is both unexhausted and waived. See Lin Zhong v. United States Dep't of Justice, 480 F.3d 104, 123 (2d Cir. 2007) ("[O]ur circuit applies an issue exhaustion doctrine to petitions for review from the BIA."); Yueqing Zhang v. Gonzales, 426 F.3d 540, 542 n.1 (2d Cir. 2005) ("Issues not sufficiently argued in the briefs are considered waived . . . ." (quoting Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998))). The waiver is significant because these findings could, by themselves, support an adverse credibility determination in this case. See generally Zhou Yun Zhang v. INS, 386 F.3d 66, 73-78 (2d Cir. 2004), overruled on other grounds by Shi Liang Lin v. United States Dep't of Justice, 494 F.3d 296, 305 (2d Cir. 2007) (en banc). We cannot, however, make that decision ourselves, and, for reasons stated in the remainder of this opinion, we cannot confidently predict that the IJ would have so ruled in the absence of other findings to which petitioner did raise objection and which, in light of recent decisions by this court, are erroneous.

9

## 2. The Challenged Adverse Credibility Findings

### a. Vague Testimony

The IJ concluded that Li's persecution claim was not credible, in part, because her testimony was "extremely vague and general." In re Shunfu Li, No. A95 462 260, at 7-8. As noted in our discussion of the facts of the case, this vagueness characterization is not without some support in the record. A fact finder may understandably find detailed testimony more convincing than vague testimony. See Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 152 (2d Cir. 2003) (acknowledging that IJ may "fairly wonder whether [very spare testimony] is fabricated"), overruled on other grounds by Shi Liang Lin v. United States Dep't of Justice, 494 F.3d at 305; see also Zhou Yun Zhang v. INS, 386 F.3d at 79 n.11. Nevertheless, the law in this circuit holds that, in a proceeding wherein an alien seeks relief from removal, a finding of testimonial vagueness cannot, without more, support an adverse credibility determination unless government counsel or the IJ first attempts to solicit more detail from the alien. See Ming Shi Xue v. BIA, 439 F.3d at 122-23; Jin Chen v. United States Dep't of Justice, 426 F.3d at 114. In other circumstances, our credibility review is much more deferential. See, e.g., United States v. Jacobo, 934 F.2d 411, 418 (2d Cir. 1991) (noting that, when confronted with vague trial testimony, sentencing court was free to draw "whatever inference seem[ed] appropriate to it," or to "have [the] witness recalled in order to clarify his testimony"); United States v. Hernandez, 588 F.2d 346, 349 n.2 (2d Cir. 1978) (upholding instruction to jury that, when evaluating credibility of witnesses whose testimony was, inter alia, vague, jurors (who

10

lack power to question witnesses) must exercise their "own judgment [and] give the testimony of each witness such credibility, if any, that [they] may think it deserves"); see also United States v. Castelli, 306 F.2d 640, 641 (2d Cir. 1962) (holding that district court was free to reject Sixth Amendment challenge to conviction supporting deportation where alien offered only "vague in the extreme" testimony that he was deprived of counsel); see generally NLRB v. Dinion Coil Co., 201 F.2d 484, 488-89 (2d Cir. 1952) (observing that "methods of evaluating the credibility of oral testimony do not lend themselves to formulations in terms of rules"). Our approach to review of credibility determinations is generally guided by the characteristics of the particular context in which those determinations were made. In the context of removal proceedings, we have concluded that requiring IJs to solicit additional details from witnesses before rejecting their testimony as incredible on vagueness grounds serves a useful prophylactic purpose by protecting against arbitrary differences – actual or perceived – in the detail required by different IJs who hear thousands of applications for relief, many premised on what appear to be similar factual scenarios. See generally Ming Shi Xue v. BIA, 439 F.3d at 124 (describing rule as having "a logical basis in the particular relationship between decisions of the immigration judges and the appellate courts called on to review these decisions"). In other administrative law contexts, such as Social Security disability cases, the agency's own regulations require administrative law judges affirmatively to assist claimants in developing the record, and our review correspondingly extends to the question of whether the judge "satisfied his duty to develop the record" in each case. Perez

11

v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see 20 C.F.R. §§ 404.1512(d), (e). [5]

Because this vagueness rule was announced only after the IJ's challenged finding in this case, it is not surprising that the IJ did not solicit more detail from Li with respect to vague aspects of her testimony. In the absence of such an attempt, however, we conclude that it was error to rely on vagueness in making the challenged adverse credibility finding. See Gelman v. Ashcroft, 298 F.3d 150, 152 n.1 (2d Cir. 2002) (noting that remand for reconsideration in light of case law decided while case was on appeal is "routine procedure for addressing an issue that has not received consideration by the initial decision-maker, whether it is a district court or an administrative agency like the BIA"); United States v. Kostakis, 364 F.3d 45, 51 (2d Cir. 2004) (noting that unless Ex Post Facto Clause is implicated, appellate court applies law in effect at time of appeal).

### b.    Contradictory Background Documents

The IJ also concluded that Li was not credible because her testimony as to the position

---

[5] We have been careful to note that our rule requiring IJs to identify and probe perceived inconsistencies in an asylum applicant's testimony "is not tantamount to a duty to assist the counseled asylum applicant in putting forward an affirmative asylum claim in the first place." Ming Shi Xue v. BIA, 439 F.3d at 125 n.18. While our court has not yet addressed the question of whether IJs have such a duty, several of our sister circuits have answered it in the negative. See, e.g., Debab v. INS, 163 F.3d 21, 26 (1st Cir. 1998) (rejecting petitioner's argument that IJ should have asked him questions whose answers would have filled in gaps in his affirmative case); Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir. 1986) ("The substantial evidence standard of review does not require the INS to produce any evidence at all if the alien does not independently satisfy his burden initially.").

12

she held within Falun Gong was contradicted by information downloaded from a website.[6] This conclusion is not reasonably supported by the record. See Lin Zhong v. United States Dep't of Justice, 480 F.3d at 129 (remanding where "IJ's characterization" of evidence was "unsupported by the record"). The IJ cited the website for the proposition that "there are no leaders" within Falun Gong. Tr. of Hr'g at 8. The actual website quotes a Falun Gong spokesperson's statement that "[t]here is no leader" of Falun Gong, an assertion made within the context of explaining that Falun Gong is not a cult, religion, or sect. CAR at 97. Nothing on the website indicates that no persons within Falun Gong ever assume organizational or leadership responsibilities; to the contrary, the site notes that "four top organizers" were imprisoned in 1999, affirmatively suggesting that the movement does in fact have some type of leadership structure. Id. at 98 (emphasis added). Thus, the website statement cannot fairly be construed to contradict Li's testimony that she held an unpaid local leadership position. Indeed, to the extent the website states that all work within Falun Gong is done by "volunteers," id. at 97, it is consistent with Li's testimony that she served without

---

[6] Because the parties mutually agreed to the admission of this background evidence, we have no occasion to consider the reliability foundation appropriate to evaluation of information published on the Internet in proceedings not strictly controlled by the Federal Rules of Evidence. See Zhen Nan Lin v. United States Dep't of Justice, 459 F.3d 255, 268 (2d Cir. 2006) (noting that parties are "not required to comply with . . . the requirements of the Federal Rules of Evidence . . . when seeking to have documentary evidence . . . admitted in a removal proceeding"); see generally Chhetry v. United States Dep't of Justice, 490 F.3d 196, 200 (2d Cir. 2007) (holding, where BIA took administrative notice of news reports published on Internet, that "the particular source relied upon . . . matters only to the question of accuracy or verifiability").

remuneration.

### c.     <u>Unauthenticated Official Documents</u>

Li's claim of past persecution and feared future persecution found its strongest corroboration in a group of purportedly official documents that (1) had authorized her 2000 arrest and the seizure of Falun Gong materials from her home, and (2) now authorize her arrest upon return to China. If these documents are as represented, <u>i.e.</u>, if Li was in fact arrested for Falun Gong activities and if Chinese officials are now looking to arrest Li upon her return to China, this evidence might cast Li's testimony in a decidedly more favorable light. The IJ never considered this possibility. She concluded that the documents were entitled to no weight because they were not authenticated pursuant to relevant regulations. While the IJ did not identify the regulations relied upon, we presume that she was referring to 8 C.F.R. § 287.6, which generally requires official records from foreign countries to be authenticated by (1) "an official publication thereof," or (2) "a copy attested by an officer so authorized." 8 C.F.R. § 287.6(b)(1).

In <u>Cao He Lin v. United States Dep't of Justice</u>, decided after the challenged agency ruling in this case, this court held that an IJ may not dismiss evidence based merely on an applicant's "failure to authenticate it pursuant to [§ 287.6]," 428 F.3d at 405. This rule derives from our recognition that "asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor" and, therefore, "the BIA's authentication regulation is not the exclusive means of authenticating records before an

14

immigration judge." Qin Wen Zheng v. Gonzales, 500 F.3d 143, 148 (2d Cir. 2007) (internal quotation marks omitted); see also Xue Deng Jiang v. Gonzales, 474 F.3d 25, 29 (1st Cir. 2007) (identifying error where IJ rejected "documents solely because they were not authenticated in strict conformity with the regulation" (emphasis in original)). In affording an IJ discretion to determine documents' authenticity by reference to the totality of the evidence, we have ruled that such evidence includes any adverse finding respecting a petitioner's credibility. See Qin Wen Zheng v. Gonzales, 500 F.3d at 147 (holding agency may use general adverse credibility finding "in support of its refusal to credit the authenticity" of document submitted by petitioner). At the same time, however, we recognize the possibility that, in circumstances where an IJ is satisfied as to the authenticity of certain documents without regard to a petitioner's testimony, those documents may then shed favorable light on the credibility of that testimony. In sum, while we have rejected any requirement that corroborative documents strictly comply with the BIA's authentication regulations, we afford IJs considerable flexibility in determining the authenticity of such documents from the totality of the evidence and in using documents found to be authentic in making an overall assessment of the credibility of a petitioner's testimony and, ultimately, of her persecution claim.

We express no view as to the reliability of the documentary evidence here at issue or the weight that it might bear if found to be authentic. We hold only that, in light of Cao He Lin, we now conclude that the IJ erred in finding that the lack of § 287.6 authentication

15

required her to reject the evidence and to give it no weight at all in determining Li's credibility.

### 3. The Decision to Remand

Where the adverse credibility determination supporting denial of relief from removal is a product of some agency findings infected by legal error and others that are not, our decision to uphold the agency decision or to remand for further proceedings depends on how "confidently" we can "predict that the agency would reach the same decision absent the errors that were made." Xiao Ji Chen v. United States Dep't of Justice, 471 F.3d 315, 339 (2d Cir. 2006) (internal quotation marks omitted); see Cao He Lin v. United States Dep't of Justice, 428 F.3d at 401-02 (indicating that confident prediction of same result absent identified errors demonstrates futility of remand). In this case, we cannot confidently predict what credibility determination the agency would make upon remand if (a) it not only correctly recognized that the Internet material did not contradict Li's testimony; but, (b) by further inquiry, it were able to clarify vague aspects of Li's testimony; and (c) upon recognition of its discretion to determine document authenticity by reference to the totality of the evidence, it were to find the submitted warrants reliable. Accordingly, we cannot uphold the agency decision on the record before us; instead, we must remand for further proceedings consistent with this opinion and the recent precedents discussed herein.

## III. Conclusion

To summarize, we conclude that the challenged denial of removal is based on an

16

adverse credibility finding that fails to comport in certain respects with subsequently announced rulings of this court.  Further, we conclude that remand is necessary because we cannot confidently predict that, if the agency were to follow our recent precedents, it would reach the same conclusion.

PETITION GRANTED, DENIAL DECISION VACATED, AND CASE REMANDED.