DAVIS, Circuit Judge,
dissenting:
In this case the Attorney General asks us to accept an adverse credibility determination based on missing details that the Attorney General never mentioned before the IJ and that the IJ never requested of petitioner. See infra n.6. But “[ujnlike an Article III judge, an IJ is not merely the fact finder and adjudicator, but also has an obligation to establish and develop the record.” Islam v. Gonzales, 469 F.3d 53, 55 *372 (2d Cir.2006).[1] Indeed, an IJ is statutorily required to “interrogate, examine, and cross-examine the alien and any witnesses.” 8 U.S.C. § 1229a (b)(1).
Consistent with this responsibility, “[a]n IJ must offer a specific, cogent reason for rejecting evidence, whether testimonial or documentary, because it lacks credibility.” Tassi v. Holder, 660 F.3d 710, 720 (4th Cir.2011) (emphasis added). “Examples of specific and cogent reasons include inconsistent statements, contradictory evidence, and inherently improbable testimony....” Tewabe v. Gonzales, 446 F.3d 533, 538 (4th Cir.2006) (internal quotation marks omitted). We have never said that lack of specificity, in and of itself, is enough for an adverse credibility determination — and for good reason. Because
the list of circumstantial details can be expanded indefinitely, a legal standard that empowers an IJ or the [Board] to rule against a petitioner who fails to anticipate the particular set of details that the fact-finder desires (but does not request, through questions directed to the applicant) is no standard at all. It would enable the administrative deci-sionmaker to reject whichever applicants that fact-finder happens to disfavor.
Ming Shi Xue v. Bd. of Immigration Appeals, 439 F.3d 111, 123 (2d Cir.2006) (emphasis in original) (quoting Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 151-52 (2d Cir.2003)). Accordingly, we should adopt the view of the Second Circuit and hold that
in a proceeding wherein an alien seeks relief from removal, a finding of testimonial vagueness cannot, without more, support an adverse credibility determination unless government counsel or the IJ first attempts to solicit more detail from the alien.
Li v. Mukasey, 529 F.3d 141, 147 (2d Cir.2008).[2]
We already impose a similar rule with respect to adverse credibility determinations based on the lack of corroborating evidence. See Lin-Jian v. Gonzales, 489 F.3d 182, 191 (4th Cir.2007) (“The requirement that the applicant provide a reasonable explanation for the lack of corroborating evidence ‘presumes that the IJ offers a *373 petitioner an opportunity to explain the absence.’ ”)(emphasis added) (quoting Obale v. Attorney Gen. of the United States, 458 F.3d 151, 163 (3d Cir.2006)). And the Second Circuit’s rule on testimonial vagueness is consistent with the statute governing adverse credibility determinations, which permits an IJ to consider, inter alia, the “responsiveness of the [asylum] applicant,” 8 U.S.C. § 1158(b)(l)(B)(iii) (emphasis added); the statute says nothing about the specificity of an applicant's testimony.[3] See, e.g., Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (observing that, under “the interpretive maxim inclusio unius est exclusio alterius,” “to include one item ... is to exclude other similar items”).
Here, the adverse credibility determination was based on Chen’s failure to provide details that neither the IJ nor the government requested: “how many people were praying with [Chen]” when he was arrested in China, “where they were praying,” “how physically he and others were abused, what happened to other church members who allegedly were with him,” and whether the pastor also was arrested. J.A. 73. Because the IJ did not request these details, the adverse credibility determination “is not based on a specific, cogent reason, but, instead is based on speculation, conjecture, or an otherwise unsupported personal opinion,” and, thus, “it cannot be upheld.” Tewabe, 446 F.3d at 538.[4]
I invite the reader to turn back and reread pages 2 through 6 of the majority opinion. Is the narrative there incomplete or incoherent? Is the reader left wondering what happened to Chen that prompted his escape from China? Does the reader discern any implausibility or telling gaps in the narrative? The answer to each query is no. Notably, moreover, the majority has provided only a cursory summary of the detailed testimonial and documentary evidence that was before the IJ.[5] The documentary evidence, in particular, is ful *374 some and is not in any manner inconsistent with the testimonial evidence, nor is any of the evidence inherently implausible or inherently unbelievable. Accordingly, we should grant the petition for review, vacate the Board’s order, and remand for further proceedings.
Indeed, it is highly doubtful that my friends in the majority disagree with what I have written; the law is clear. This is made evident by the majority’s curious footnotes 5 and 6 and related text. See ante, at 370, and nn. 5 & 6. What is revealed therein is that the majority does not believe Chen has adduced sufficient evidence of past or future persecution, not that his credibility is wanting.[6] Undeniably, this substitution of a reason to deny Chen’s petition for review is flatly prohib *375 ited by binding circuit precedent. See Crespin-Valladares v. Holder, 682 F.3d 117, 123 (4th Cir.2011).
Respectfully, I dissent.

. Accord Sankoh v. Mukasey, 539 F.3d 456, 467 (7th Cir.2008) ("Unlike Article III courts, an immigration court is a more inquisitorial tribunal. Congress has given immigration judges the authority to 'interrogate, examine, and cross-examine the alien and any witnesses.’ ”) (quoting 8 U.S.C. § 1229a(b)(l)); Mekhoukh v. Ashcroft, 358 F.3d 118, 129 & n. 14 (1st Cir.2004) (recognizing an IJ's duty "to fully develop the record”). See also Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (observing that an administrative law judge "acts as an examiner charged with developing the facts”); Charles H. Koch, Jr., 2 Administrative Law & Practice § 5:25 (3d ed.) ("The administrative judge is pivotal to the fact-finding function of an evidentiary hearing and hence, unlike a trial judge, an administrative judge has a well-established affirmative duty to develop the record.”).

. The Second Circuit has emphasized that its rule is “not tantamount to a duty to assist the counseled asylum applicant in putting forward an affirmative asylum claim in the first place.” Li, 529 F.3d at 148 n. 5 (internal quotation marks omitted). Nor do I favor any such rule. Rather, like the Second Circuit, I simply would not sustain a result adverse to the applicant under circumstances in which the IJ has carried out an ambush by abjuring questions that are easily answered and that would no doubt provide an adequate level of "specificity,” the absence of which the IJ later relies on to reject the applicant's claim to asylum. As explained in text, such a practice is wholly incompatible with the IJ’s responsibilities under law.
The majority's studied dismissiveness of this line of Second Circuit authority is notable, considering Chen's removal proceedings commenced in New York. No doubt, he and his counsel now wish he had remained there rather than relocating to Virginia and moving to transfer venue.

. The statute also permits adverse credibility determinations on the basis of
the demeanor [and] candor ... of the applicant or witness, the inherent plausibility of the applicant’s or witness's account, the consistency between the applicant's or witness’s written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements....
8 U.S.C. § 1158(b)(l)(B)(iii). The IJ relied on no such considerations in this case.

. The majority states that "the IJ’s adverse credibility determination and the Board’s af-firmance thereof flowed directly from their overarching concerns about the lack of detail and the general, vague nature of Chen’s testimony." Ante, at 369. In support of this statement, the majority asserts that "the IJ must assess, inter alia, whether an applicant’s testimony ‘refers to specific facts sufficient to demonstrate that the applicant is a refugee’ and whether that testimony is ‘credible.’ ” Id. at 369 (quoting 8 U.S.C. § 1158(b)(l)(B)(ii)). In fact, the standard cited by the majority applies only when the applicant seeks to meet his burden of proof without coiroborating evidence. 8 U.S.C. § 1158(b)(l)(B)(ii). Moreover, the cited language appears nowhere in the Board’s brief order affirming the IJ’s decision. The Board ”act[ed] on improper grounds” by affirming on the basis of the flawed credibility determination, and the majority is "powerless to affirm ... by substituting what it considers to be a more adequate or proper basis.” SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), quoted in Crespin-Valladares v. Holder, 632 F.3d 117, 123 (4th Cir.2011).

.For example, the majority asserts simply that Chen "became depressed" after breaking up with his girlfriend in 2003, ante, at 365-66, but the evidentiary record is perfectly *374 clear and undisputed that the break-up had such a profoundly distressing effect on Chen that he contemplated suicide. Whatever the IJ may or may not believe, we Americans are not alone in our familiarity with the sometimes bleak lives of twenty-year-olds, as Chen then was, at moments of deep emotional loss. It was at this low point in Chen’s life that his friend, Jiang Zhi Yong, a devout Christian who remains in China and whose affidavit is in the record, introduced Chen to the underground, i.e., the authentic, Christian experience. Chen’s mother's affidavit confirms this account. Chen was baptized four years later, in 2007.
As he did with all of the confirmatory documentary evidence, the IJ simply ignored this highly detailed and specific aspect of Chen's narrative. With all due respect for my friends in the majority, their assertion that ”[t]he IJ thoroughly reviewed the evidence Chen did present in support of his case,” ante, at 369-70, is demonstrably untrue. Rather than assess and evaluate the whole record and reach a judgment as to the overall persuasiveness of what was presented, the IJ simply ticked off distinct items of evidence as if they comprised some form of checklist, pausing at each simply to identify what the particular item of evidence did not show. See, e.g., J.A. 44 (observing that Chen "lives in Virginia” but "had a difficult time giving the address where he lives,” which was already in the record and undisputed). The IJ concluded that Chen ”ha[d] not met his burden of proof to show that whatever may have occurred to him was such as to have constituted past persecution.” Id. at 74. The Board went further and declared Chen’s testimony "incredible.” Id. at 4.
The majority's less-than-bold assertion that neither the IJ’s oral decision (rendered immediately at the end of the evidentiary hearing) nor the Board’s one-page decision affirming the IJ "is a model of clarity,” ante, at n. 6, is charitable in the extreme. In any event, the majority's faint-hearted attempt to rest its denial of relief here on the ipse dixit of a merger of principles related to insufficiency of evidence on the merits, on the one hand, and credibility of documentary and testimonial evidence, on the other hand, fares no better than the Board’s attempt. Both are utter failures because the IJ relied exclusively on a lack of credibility, as evidenced by his reference to "whatever may have occurred to [Chen].” J.A. 74. And the IJ offered no "specific, cogent reason” — in the face of Chen's testimony and corroborating documentary evidence — for his disbelief that Chen was arrested and beaten by Chinese authorities. See Tassi, 660 F.3d at 720.

. Indeed, like my colleagues in the majority, even the second-year law student who represented the government before the IJ fully understood that this is a sufficiency of the evidence case, not a credibility case. Her abbreviated closing argument consisted entirely of the following:
It is the Government’s position that the respondent has not met his burden of proof in establishing that he was persecuted for his religious beliefs. The respondent has not offered sufficient testimony detailing how or why he became a Christian, nor has he sufficiently testified as to any of his church activities. The respondent offered insufficient testimony regarding his detention and mistreatment by the Chinese police. Finally, the respondent did not provide sufficient corroboration in evidence of religious beliefs, church activities, or any mistreatment by government officials in China. It is therefore the position of the Government that respondent is not eligible for relief for asylum.
*375 J.A. 49 (emphases added).