**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1596**

ZHAO LIN CHEN,

        Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: April 9, 2013         Decided: July 2, 2013

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

Petition denied by unpublished per curiam opinion. Judge Davis authored a dissenting opinion.

Adedayo O Idowu, LAW OFFICES OF ADEDAYO O IDOWU, PLLC, New York, New York, for Petitioner. Stuart F. Delery, Acting Assistant Attorney General, Shelley R. Goad, Assistant Director, Jennifer R. Khouri, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Zhao Lin Chen, a native and citizen of the People's Republic of China, petitions for review of an order of the Board of Immigration Appeals ("the Board") dismissing his appeal from the decision of the immigration judge ("IJ") denying his applications for asylum, withholding of removal under the Immigration and Naturalization Act ("INA"), and withholding of removal under the Convention Against Torture ("CAT"). We deny the petition for review because we conclude that substantial evidence supports the Board's decision.

I

In late 2008, the Department of Homeland Security ("DHS") issued a Notice to Appear to Chen charging him with removability as an alien having entered the United States at an unknown time and place without inspection. Chen conceded removability, but sought relief in the form of asylum, withholding of removal, and protection under the CAT.

In his application and during the proceedings before the IJ, Chen testified to the following: He was born in 1983, is not married, and does not have any children. In 2003, he broke

2

up with his girlfriend and became depressed.[1] Shortly thereafter, a friend introduced him to Christianity, and Chen began to attend church. The church was not in a fixed location and congregants met in secret for fear of discovery, "gather[ing] in [their] different members' homes." (J.A. 115.) In May 2007, Chen was baptized.

Chen recounted that on the evening of November 4, 2007, he and other congregants were meeting at his friend's house when police officers "rushed into [their] gathering place, tor[e] out [their] Bible[s] and destroyed things at [his friend's] home arbitrarily." (J.A. 309.) Chen and the other congregants were taken to the police station and interrogated. Chen refused to answer the officers' questions and was "kicked and punched" several times.[2] (J.A. 89.) After four days, Chen's parents were able to collect enough money to secure his release. Before leaving the police station, Chen was required to sign a

---

[1] Chen attached several supporting documents to his application, including verification of identity, a notice from his former employer in China indicating that he was terminated from employment for participating in an underground church, a certificate indicating he was a member of the Changle City Christian Church, and a notice indicating that he had taken courses at a church in New York City upon arriving in the United States.

[2] Chen testified that any remaining scars or other physical marks from having been beaten and burned with a lit cigarette had faded with time and were "not very noticeable now." (J.A. 111.)

guarantee letter stating that he would not participate in underground church activities in the future. When Chen's employer was notified that he was involved in an underground church, and had been "disturbing social order," Chen lost his job for "tarnish[ing] the reputation of the company." (J.A. 101.)

Based on the events of November 4, Chen decided to leave China. His parents borrowed money from friends and relatives in order to pay a snakehead a $75,000 fee to smuggle Chen into the United States.[3] Chen testified that he feared that if he returned to China he would be persecuted for his Christian faith.

Chen indicated that since arriving in the United States in January 2008, he had been working in Chinese restaurants, first in New York and now in Virginia. He sends the money earned to China to help pay off the debt his parents owe as a result of borrowing money to pay the snakehead. Chen stated that he had attended church in New York, but that he had not found a Chinese-speaking church in Virginia and that he did not have a vehicle to help him locate a church.

---

[3] Chen stated that he did not borrow money from the snakehead and did not owe the snakehead any money. Chen also told the IJ that he made less than $100 a month while in China, and that his father made the equivalent of $4 or $5 a day.

4

Chen's aunt testified in support of Chen's application. She stated that she met up with Chen after his arrival in New York, and that Chen told her he had fled after being persecuted for his faith. She was aware that Chen continued to practice Christianity and attend church activities, having observed religious pamphlets in his residence and photographs of him participating in religious events.

In addition, Chen submitted an affidavit from his mother stating that Chen had been arrested in China for being a Christian. She stated that she was aware of his underground church activities, had observed that he was thinner and bruised after having been detained by the police in November 2007, and that she and Chen's father had secured his release by paying money to the police. She also stated that she put some liquid medicine on Chen's body to treat his injuries from the detention. Chen's mother also corroborated that Chen had been dismissed from his employment in China because of his participation in the underground church.

Chen also submitted an affidavit from the friend who had introduced him to Christianity and invited him to participate in the church. The friend stated that Chen had been baptized in May 2007, participated in church activities, and was present at the home church meeting in November 2007 when police arrested the congregants. The friend's testimony echoed Chen's with

5

respect to the police destroying items at the home, taking Bibles from congregants, and detaining them at a police station. The friend stated that he was detained for a month, at which time he was also required to sign a guarantee stating that he would not participate in underground church activities in the future. The friend also stated that the Chinese government still wanted to arrest Chen.

Lastly, Chen introduced the U.S. State Department's 2009 International Religious Freedom Report for China, which referred to the Chinese government's sanctioning and close-monitoring of underground, unauthorized churches. The report notes that in some regions, police disrupt house meetings, detain congregants, and interrogate individuals about their participation in home churches.

The IJ denied Chen the relief requested. In recounting the evidence summarized above, the IJ noted that Chen's testimony was "very general" and "gave very few details as to" his church activities in China and the circumstances surrounding his November 4 arrest, subsequent detention, and interrogation. (J.A. 43, 46.) The IJ concluded, in sum, "that [Chen's] testimony itself was not specific and detailed, nor was the corroborating evidence specific and detailed, as required under the REAL ID Act, in the absence of the respondent's testimony being specific and detailed." (J.A. 47.) "Accordingly," the IJ

6

found that Chen "ha[d] not met his burden of proof to show that whatever may have occurred to him was such as to have constituted past persecution, or even to show that [Chen] has some reasonable possibility of future persecution." (J.A. 47.) The IJ next observed that "the REAL ID Act also speaks to the credibility of a respondent's testimony," and concluded that as a whole, the "general nature" of Chen's testimony and documentation led to the conclusion that Chen was not credible. (J.A. 47-48.) For these reasons the IJ found that Chen had not met his burden of showing eligibility for asylum, or the more substantial burden of demonstrating entitlement for withholding of removal under the INA, and that Chen had not satisfied the requirements for relief under the CAT.

Chen appealed that decision to the Board, arguing that the IJ failed to provide an adequate explanation for the determinations that Chen had failed to provide sufficiently specific and detailed testimony, that he was not credible, and that his corroborating evidence was not sufficient to independently satisfy his burdens. The Board concluded that substantial evidence supported the IJ's decision and, in particular, noted:

> Contrary to [Chen's] arguments on appeal, the [IJ], before making his adverse credibility finding, identified his particular concerns with the testimony of the respondent and his witness as well as the documentary evidence submitted below. Specifically

7

> the [IJ] provided particular examples of the general nature and the missing details from the testimony of both [Chen] and [his aunt]. He also described specific problems with the vagueness of the documentary evidence and identified missing information before determining that [Chen] did not independently establish his claim on the basis of the corroborating evidence. The [IJ] appropriately made his credibility determination based on the totality of the circumstances and, specifically, on his determination that neither the testimony nor the corroborating evidence were specific and detailed.

(J.A. 3.) The Board observed that the IJ had "considered the limited documentary evidence in conjunction with [Chen's] incredible testimony in determining that he had not met his burden of proof." (J.A. 4.) Because the Board concluded that the IJ "correctly determined that the respondent had not met his burden to demonstrate eligibility for asylum," it also recognized that Chen could not satisfy the more stringent standard required for withholding for removal. (J.A. 4.) The Board also held that Chen had failed to establish that it was more likely than not that he would be tortured upon return to China and therefore was ineligible for relief under the CAT. Accordingly, the Board dismissed Chen's appeal.

Chen filed a timely petition for review in this Court, and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).


II


8

Our review of the Board's decision is highly deferential, affording broad—but not absolute—deference to the agency's disposition. See 8 U.S.C. § 1252(b)(4)(B)-(D); see also Haoua v. Gonzales, 472 F.3d 227, 231 (4th Cir. 2007). We uphold the denial of an asylum claim "unless such a denial is 'manifestly contrary to the law and an abuse of discretion.'" Zelaya v. Holder, 668 F.3d 159, 165 (4th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(4)(D)).

> When the denial of asylum is based on the [Board's] conclusion that the applicant failed to meet his evidentiary burden for establishing eligibility, then we review for substantial evidence and must affirm a determination of statutory ineligibility by the [Board] unless the evidence presented was so compelling that no reasonable factfinder could fail to find eligibility for asylum.

Dankam v. Gonzales, 495 F.3d 113, 119 (4th Cir. 2007) (internal quotation marks omitted).


A

The INA authorizes the Attorney General to confer asylum on any refugee. See 8 U.S.C. § 1158(a). An applicant for asylum bears the burden of proving that he holds refugee status, i.e., that he is "unable or unwilling to return to . . . [his] country because of [past] persecution or a well-founded fear of [future] persecution on account of," inter alia, his religious beliefs. 8 U.S.C. §§ 1101(A)(42)(A), 1158(b)(1)(B)(1). An applicant who

9

has endured past persecution is entitled to a presumption of having a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The REAL ID Act of 2005 amended the INA, and applies to Chen's application. Under the REAL ID Act,

> [t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

8 U.S.C. § 1158(b)(1)(B)(ii).

Chen attempted to satisfy his burden of proving eligibility for asylum by showing that he had been subjected to past persecution on account of his Christian faith due to his November 2007 detention. Chen contends the Board's decision is not supported by substantial evidence because it was "based on speculation and conjecture rather than specific and cogent reasoning" as to what relevant information Chen failed to provide to the IJ. (Opening Br. 11.) Chen asserts that if the Board had paid closer attention to his testimony and corroborating evidence, giving it "sufficient consideration," the Board would have held in Chen's favor. (Id. at 11, 14) And

10

he claims that neither the IJ nor the Board "cite[d] any examples of Petitioner's testimony which were supposed to be too general." (Id. at 14.) Chen maintains that because he established past persecution, he is entitled to the presumption of having a well-founded fear of future persecution and thus is eligible for asylum.

We have reviewed the Board's decision and conclude that substantial evidence supports its determination that Chen failed to establish eligibility for asylum. As noted, under 8 U.S.C. § 1158(b)(1)(B)(ii), the IJ must assess, inter alia, whether an applicant's testimony "refers to specific facts sufficient to demonstrate that the applicant is a refugee" and whether that testimony is "credible." Under 8 U.S.C. § 1158(b)(1)(B)(iii), an IJ may make an adverse credibility determination after considering "the totality of the circumstances, and all relevant factors." While lack of detail, vagueness, and the like are not specifically delineated in the credibility determination provision, they clearly constitute other "relevant factors." See Shrestha v. Holder, 590 F.3d 1034, 1040 (9th Cir. 2010) ("[E]ven though lack of detail is not expressly listed as a factor that may be considered [under the REAL ID Act's credibility determination provision at 8 U.S.C. § 1158(b)(1)(B)(iii)], the pre-REAL ID Act practice of looking to the level of detail of the claimant's testimony to assess

11

credibility, see Singh-Kaur v. INS, 183 F.3d 1147, 1153 (9th Cir. 1999), remains viable under the REAL ID Act as it is a 'relevant factor.'").[4] Under these provisions, either basis—specificity or credibility—would be independently adequate grounds for determining that an applicant's testimony fails to satisfy his burden of proving eligibility for asylum. A lack of detail and generalized testimony can be both a factor in assessing whether an applicant has satisfied his or her overall burden of proof and a factor in considering the credibility of an applicant's testimony. While the two analyses are distinct, they do sometimes overlap.

In this case, the IJ's adverse credibility determination and the Board's affirmance thereof flowed directly from their overarching concerns about the lack of detail and the general, vague nature of Chen's testimony. Contrary to Chen's arguments, the Board offered specific reasons for its determination, citing to the IJ's "particular concerns" and "specific examples" of how Chen's evidence was too generalized, lacking detail, and otherwise insufficient to provide credible evidence sufficient to carry his burden of proof. See J.A. 3. The IJ thoroughly

---

[4] Other courts have also recognized that lack of detail, vagueness, and omissions are salient to an IJ's credibility determination. E.g., Dorosh v. Ashcroft, 398 F.3d 379, 382 (6th Cir. 2004); Elzour v. Ashcroft, 378 F.3d 1143, 1152 (10th Cir. 2004); Capric v. Ashcroft, 355 F.3d 1075, 1085 (7th Cir. 2004).

12

reviewed the evidence Chen did present in support of his case, noted specific examples of why that evidence fell short of satisfying his burden, and the Board conducted its own review of that decision and the record before dismissing Chen's appeal. In so doing, they offered "specific, cogent reason[s]" for the determination, which was not "based on speculation, conjecture, or an otherwise unsupported personal opinion." See Zuh v. Mukasey, 547 F.3d 504, 507 (4th Cir. 2008) (internal quotation marks omitted). Rather, the Board's denial of Chen's claim was based on the totality of the record and Chen's failure to prove eligibility for asylum, and specifically that he had been persecuted—as that term is understood in the context of asylum—in China.[5] Because Chen's corroborating evidence did not overcome this factual deficiency, the Board appropriately

---

[5] As we are often required to observe, "[p]ersecution is an extreme concept that does not include every sort of treatment that our society regards as offensive." Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (internal quotation marks omitted); see also id. at 177-78 (delineating cases demonstrating this point, including ones where an applicant's detention, interrogation, beatings, and other deprivations did not compel a conclusion of past persecution). While the events Chen related are not justifiable, Chen failed to provide adequate details from which the IJ could determine that those events rose to the level of what our jurisprudence recognizes as "persecution." As such, he failed to satisfy his burden of demonstrating refugee status and, in turn, eligibility for asylum.

determined that the totality of Chen's evidence failed to satisfy his burden of proof.[6]

The Board's decision pointed to specific concerns regarding the lack of detail and the generalized nature of Chen's testimony, and why Chen had not satisfied his burden of proving refugee status. Consequently, as the IJ stated and the Board affirmed, Chen failed to "[meet] his burden of proof to show that whatever may have occurred to him was such as to have constituted past persecution, or even to show that [he] has some reasonable possibility of future persecution." (J.A. 47.) The IJ appropriately permitted Chen to present and develop his case and to satisfy his burden of proof; it and the Board then considered the totality of the evidence before them and concluded it was insufficient to meet Chen's burden.[7] We have

---

[6] We disagree with the dissenting opinion's characterization that we are substituting our own rationale for that of the IJ and the Board. Neither decision is a model of clarity, but they are both grounded in Chen's failure to present sufficient proof, be it through testimony or corroborating evidence, to support his claim. That same deficiency in Chen's testimony supported the adverse credibility determination. The IJ and Board decisions invoked two permissible factors (sufficiency and credibility) in considering—and ultimately denying—Chen's application.

[7] The dissenting opinion is correct that an IJ has a role in the development of the record. The IJ in this case did ask Chen a series of questions to "determine a frame of reference," which "was not fleshed out on direct examination, nor was it fleshed out on cross or redirect." (J.A. 73.) At the outset of the proceedings and throughout, the IJ took an active role in
(Continued)

14

reviewed the Board's decision as well as the record on which it based its determination, and conclude the evidence is not "so compelling that no reasonable factfinder could fail to find that [Chen] had established eligibility for asylum." Dankam, 495 F.3d at 124 (internal quotation marks omitted). Accordingly, substantial evidence supports the Board's conclusion that Chen did not demonstrate eligibility for asylum based on past persecution.

Chen also contends that even if he did not establish past persecution, he nonetheless demonstrated a well-founded fear of future persecution on account of his religion. The "well-founded fear of persecution" standard consists of two components: the subjective part requires the alien to present "candid, credible, and sincere testimony demonstrating a genuine fear of persecution," and the objective component requires him to provide "specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution." Ngarurih v. Ashcroft, 371 F.3d 182, 187-88 (4th Cir. 2004). Chen points to the same evidence of past persecution to satisfy

_____

questioning Chen and asking for clarification. We do not, however, second guess the scope of the IJ's intervention as we are to uphold the Board's decision unless it is manifestly contrary to the law and an abuse of discretion. See Lin v. Holder, 611 F.3d 228, 235 (4th Cir. 2010).

15

the subjective component and to China's "well known" "persecution [of] underground churches and participants" to satisfy the objective component. (Opening Br. 16.) Chen's argument fails because he relies on the identical evidence of past persecution to support the subjective component of this claim. See Dankam, 495 F.3d at 123 ("[T]he subjective element cannot generally be proved other than through the applicant's testimony." (citing Camara v. Ashcroft, 378 F.3d 361, 369 (4th Cir. 2004)); see also Li, 405 F.3d at 176-77 (citing Zalega v. INS, 916 F.2d 1257, 1261 (7th Cir. 1990)) (stating that an alien whose evidence of past persecution is insufficient to constitute past persecution under the statute usually cannot rely on the same evidence to show a well-founded fear of future persecution, but must prove she has reason to believe she will be treated worse upon return to her country).

B

Because substantial evidence supports the Board's decision that Chen has not met his burden for showing eligibility for asylum, it necessarily follows that substantial evidence also supports its decision that Chen did not satisfy the higher burden of demonstrating a "clear probability of persecution" on account of religion for purposes of withholding of removal. See 8 U.S.C. § 1231(b)(3); see also Dankam, 495 F.3d at 124 (Because

16

of the higher standard of proof, "[petitioner's] failure to establish eligibility for asylum necessarily means she cannot demonstrate eligibility for withholding of removal under the INA.").

So, too, do we affirm the Board's decision with regard to Chen's application for relief under the CAT, which "prohibits the United States from returning any person to a country where the person has demonstrated that it is more likely than not that he will be tortured if returned to such country." Zelaya, 668 F.3d at 161. Chen bore the burden of proving eligibility for relief under the CAT, and the Board concluded that he had not "establish[ed] that he would more likely than not face torture by or with the acquiescence . . . of the government of China upon return to China." (J.A. 4.) In light of the general and vague record Chen developed to support his claim before the IJ, substantial evidence supports that decision as well.

III

For the aforementioned reasons, Chen's petition for review is

DENIED.

17

DAVIS, Circuit Judge, dissenting:

In this case the Attorney General asks us to accept an adverse credibility determination based on missing details that the Attorney General never mentioned before the IJ and that the IJ never requested of petitioner. See infra n.6. But "[u]nlike an Article III judge, an IJ is not merely the fact finder and adjudicator, but also has an obligation to establish and develop the record." Islam v. Gonzales, 469 F.3d 53, 55 (2d Cir. 2006).[1] Indeed, an IJ is statutorily required to "interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1).

Consistent with this responsibility, "[a]n IJ must offer a specific, cogent reason for rejecting evidence, whether testimonial or documentary, because it lacks credibility." Tassi v. Holder, 660 F.3d 710, 720 (4th Cir. 2011) (emphasis added).

---

[1] Accord Sankoh v. Mukasey, 539 F.3d 456, 467 (7th Cir. 2008) ("Unlike Article III courts, an immigration court is a more inquisitorial tribunal. Congress has given immigration judges the authority to 'interrogate, examine, and cross-examine the alien and any witnesses.'") (quoting 8 U.S.C. § 1229a(b)(1)); Mekhoukh v. Ashcroft, 358 F.3d 118, 129 & n.14 (1st Cir. 2004) (recognizing an IJ's duty "to fully develop the record"). See also Richardson v. Perales, 402 U.S. 389, 410 (1971) (observing that an administrative law judge "acts as an examiner charged with developing the facts"); Charles H. Koch, Jr., 2 Administrative Law & Practice § 5:25 (3d ed.) ("The administrative judge is pivotal to the fact-finding function of an evidentiary hearing and hence, unlike a trial judge, an administrative judge has a well-established affirmative duty to develop the record.").

18

"Examples of specific and cogent reasons include inconsistent statements, contradictory evidence, and inherently improbable testimony . . . ." Tewabe v. Gonzales, 446 F.3d 533, 538 (4th Cir. 2006) (internal quotation marks omitted). We have never said that lack of specificity, in and of itself, is enough for an adverse credibility determination--and for good reason. Because

> the list of circumstantial details can be expanded indefinitely, a legal standard that empowers an IJ or the [Board] to rule against a petitioner who fails to anticipate the particular set of details that the fact-finder desires (but does not request, through questions directed to the applicant) is no standard at all. It would enable the administrative decisionmaker to reject whichever applicants that fact-finder happens to disfavor.

Ming Shi Xue v. Bd. of Immigration Appeals, 439 F.3d 111, 123 (2d Cir. 2006) (emphasis in original) (quoting Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 151–52 (2d Cir. 2003)). Accordingly, we should adopt the view of the Second Circuit and hold that

> in a proceeding wherein an alien seeks relief from removal, a finding of testimonial vagueness cannot, without more, support an adverse credibility determination unless government counsel or the IJ first attempts to solicit more detail from the alien.

Li v. Mukasey, 529 F.3d 141, 147 (2d Cir. 2008).[2]

---

[2] The Second Circuit has emphasized that its rule is "not tantamount to a duty to assist the counseled asylum applicant in putting forward an affirmative asylum claim in the first place." Li, 529 F.3d at 148 n.5 (internal quotation marks omitted). Nor do I favor any such rule. Rather, like the Second Circuit, I
(Continued)

19

We already impose a similar rule with respect to adverse credibility determinations based on the lack of corroborating evidence. See Lin-Jian v. Gonzales, 489 F.3d 182, 191 (4th Cir. 2007) ("The requirement that the applicant provide a reasonable explanation for the lack of corroborating evidence 'presumes that the IJ offers a petitioner an opportunity to explain the absence.'") (emphasis added) (quoting Obale v. Attorney Gen. of the United States, 453 F.3d 151, 163 (3d Cir. 2006)). And the Second Circuit's rule on testimonial vagueness is consistent with the statute governing adverse credibility determinations, which permits an IJ to consider, inter alia, the "responsiveness of the [asylum] applicant," 8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added); the statute says nothing about the specificity

---

simply would not sustain a result adverse to the applicant under circumstances in which the IJ has carried out an ambush by abjuring questions that are easily answered and that would no doubt provide an adequate level of "specificity," the absence of which the IJ later relies on to reject the applicant's claim to asylum. As explained in text, such a practice is wholly incompatible with the IJ's responsibilities under law.

The majority's studied dismissiveness of this line of Second Circuit authority is notable, considering Chen's removal proceedings commenced in New York. No doubt, he and his counsel now wish he had remained there rather than relocating to Virginia and moving to transfer venue.

of an applicant's testimony.[3] <u>See, e.g.</u>, <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2562 (2010) (observing that, under "the interpretive maxim <u>inclusio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u>," "to include one item . . . is to exclude other similar items").

Here, the adverse credibility determination was based on Chen's failure to provide details that neither the IJ nor the government requested: "how many people were praying with [Chen]" when he was arrested in China, "where they were praying," "how physically he and others were abused, what happened to other church members who allegedly were with him," and whether the pastor also was arrested. J.A. 73. Because the IJ did not request these details, the adverse credibility determination "is not based on a specific, cogent reason, but, instead is based on speculation, conjecture, or an otherwise unsupported personal

---

[3] The statute also permits adverse credibility determinations on the basis of

> the demeanor [and] candor . . . of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements . . . .

8 U.S.C. § 1158(b)(1)(B)(iii). The IJ relied on no such considerations in this case.

opinion," and, thus, "it cannot be upheld." Tewabe, 446 F.3d at 538.[4]

I invite the reader to turn back and reread pages 2 through 6 of the majority opinion. Is the narrative there incomplete or incoherent? Is the reader left wondering what happened to Chen that prompted his escape from China? Does the reader discern any implausibility or telling gaps in the narrative? The answer to each query is no. Notably, moreover, the majority has provided only a cursory summary of the detailed testimonial and documentary evidence that was before the IJ.[5] The documentary

---

[4] The majority states that "the IJ's adverse credibility determination and the Board's affirmance thereof flowed directly from their overarching concerns about the lack of detail and the general, vague nature of Chen's testimony." Ante, at 12. In support of this statement, the majority asserts that "the IJ must assess, inter alia, whether an applicant's testimony 'refers to specific facts sufficient to demonstrate that the applicant is a refugee' and whether that testimony is 'credible.'" Id. at 11 (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)). In fact, the standard cited by the majority applies only when the applicant seeks to meet his burden of proof without corroborating evidence. 8 U.S.C. § 1158(b)(1)(B)(ii). Moreover, the cited language appears nowhere in the Board's brief order affirming the IJ's decision. The Board "act[ed] on improper grounds" by affirming on the basis of the flawed credibility determination, and the majority is "powerless to affirm . . . by substituting what it considers to be a more adequate or proper basis." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), quoted in Crespin-Valladares v. Holder, 632 F.3d 117, 123 (4th Cir. 2011).

[5] For example, the majority asserts simply that Chen "became depressed" after breaking up with his girlfriend in 2003, ante, at 2–3, but the evidentiary record is perfectly clear and undisputed that the break-up had such a profoundly distressing (Continued)

22

effect on Chen that he contemplated suicide. Whatever the IJ may or may not believe, we Americans are not alone in our familiarity with the sometimes bleak lives of twenty-year-olds, as Chen then was, at moments of deep emotional loss. It was at this low point in Chen's life that his friend, Jiang Zhi Yong, a devout Christian who remains in China and whose affidavit is in the record, introduced Chen to the underground, i.e., the authentic, Christian experience. Chen's mother's affidavit confirms this account. Chen was baptized four years later, in 2007.

As he did with all of the confirmatory documentary evidence, the IJ simply ignored this highly detailed and specific aspect of Chen's narrative. With all due respect for my friends in the majority, their assertion that "[t]he IJ thoroughly reviewed the evidence Chen did present in support of his case," ante, at 12–13, is demonstrably untrue. Rather than assess and evaluate the whole record and reach a judgment as to the overall persuasiveness of what was presented, the IJ simply ticked off distinct items of evidence as if they comprised some form of checklist, pausing at each simply to identify what the particular item of evidence did not show. See, e.g., J.A. 44 (observing that Chen "lives in Virginia" but "had a difficult time giving the address where he lives," which was already in the record and undisputed). The IJ concluded that Chen "ha[d] not met his burden of proof to show that whatever may have occurred to him was such as to have constituted past persecution." Id. at 74. The Board went further and declared Chen's testimony "incredible." Id. at 4.

The majority's less-than-bold assertion that neither the IJ's oral decision (rendered immediately at the end of the evidentiary hearing) nor the Board's one-page decision affirming the IJ "is a model of clarity," ante, at n.6, is charitable in the extreme. In any event, the majority's faint-hearted attempt to rest its denial of relief here on the ipse dixit of a merger of principles related to insufficiency of evidence on the merits, on the one hand, and credibility of documentary and testimonial evidence, on the other hand, fares no better than the Board's attempt. Both are utter failures because the IJ relied exclusively on a lack of credibility, as evidenced by his reference to "whatever may have occurred to [Chen]." J.A. 74. And the IJ offered no "specific, cogent reason"--in the face of Chen's testimony and corroborating documentary evidence--for his
(Continued)

23

evidence, in particular, is fulsome and is not in any manner inconsistent with the testimonial evidence, nor is any of the evidence inherently implausible or inherently unbelievable. Accordingly, we should grant the petition for review, vacate the Board's order, and remand for further proceedings.

Indeed, it is highly doubtful that my friends in the majority disagree with what I have written; the law is clear. This is made evident by the majority's curious footnotes 5 and 6 and related text. See ante, at 13, and nn. 5 & 6. What is revealed therein is that the majority does not believe Chen has adduced sufficient evidence of past or future persecution, not that his credibility is wanting.[6] Undeniably, this substitution

---

disbelief that Chen was arrested and beaten by Chinese authorities. See Tassi, 660 F.3d at 720.

[6] Indeed, like my colleagues in the majority, even the second-year law student who represented the government before the IJ fully understood that this is a sufficiency of the evidence case, not a credibility case. Her abbreviated closing argument consisted entirely of the following:

> It is the Government's position that the respondent has not met his burden of proof in establishing that he was persecuted for his religious beliefs. The respondent has not offered sufficient testimony detailing how or why he became a Christian, nor has he sufficiently testified as to any of his church activities. The respondent offered insufficient testimony regarding his detention and mistreatment by the Chinese police. Finally, the respondent did not provide sufficient corroboration in evidence of religious beliefs, church activities, or any

(Continued)

24

of a reason to deny Chen's petition for review is flatly prohibited by binding circuit precedent. See <u>Crespin-Valladares v. Holder</u>, 632 F.3d 117, 123 (4th Cir. 2011).

Respectfully, I dissent.

---

mistreatment by government officials in China. It is therefore the position of the Government that respondent is not eligible for relief for asylum.

J.A. 49 (emphases added).